1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHAUN J. MCGUIRE,

                    Plaintiff,

          v.

CAROLYN W. COLVIN, Commissioner of
Social Security,

                    Defendant.

Case No. C14-249-RSM-BAT

**REPORT AND
RECOMMENDATION**

13      Shaun J. McGuire seeks review of the denial of his Supplemental Security Income and

14   Disability Insurance Benefits applications.  He contends the ALJ erred by (1) failing to provide

15   adequate reasons to reject the opinions from examining and treating providers, (2) finding Mr.

16   McGuire could perform sedentary work without the use of a cane, and (3) finding Mr. McGuire

17   not fully credible.  Dkt. 16.  For the reasons discussed below, the Court recommends the

18   Commissioner's decision be **AFFIRMED** and the case be **DISMISSED** with prejudice.

19                                    **BACKGROUND**

20      Mr. McGuire is currently 42 years old, has a GED, and has worked in data entry,

21   customer service, and clothing sales.  Tr. 64-65, 215, 241.  In June 2011, he applied for benefits,

22   alleging disability as of July 1, 2010.  Tr. 215, 217.  After his applications were denied, the ALJ

23   conducted a hearing and, on September 24, 2012, issued a decision finding him not disabled.  Tr.

14-27.  As the Appeals Council denied Mr. McGuire's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found that Mr. McGuire had not engaged in substantial gainful activity since his alleged onset date; he had the following severe impairments: degenerative disc disease of the lumbar spine with sciatica, right knee tendonosis, diabetes mellitus, obesity, affective disorder, and anxiety disorder; and these impairments did not meet or equal the requirements of a listed impairment.[2]  Tr. 16-17.  The ALJ found that Mr. McGuire had the residual functional capacity to perform sedentary work except he can stand and walk for 2 hours and sit for 6 hours in an 8-hour work day with an opportunity to rise and stretch every 2 hours; he can never operate foot controls with the right lower extremity, can never climb ladders, ropes, or scaffolds, can frequently balance, and can occasionally climb ramps and stairs and stoop, kneel, crouch, and crawl; he should have no more than occasional exposure to extreme heat and vibration, and should have no exposure to hazards such as unprotected heights and heavy machinery; in order to maintain attention, concentration, persistence, and pace in an ordinary work setting on a regular and continuing basis, and remain within customary tolerances of employers' rules regarding sick leave and absence, he can perform work of 1, 2, or 3 steps; and in order to respond appropriately to coworkers and supervision, he can have occasional interactions with supervisors, occasional work setting change, and can work in proximity to coworkers, but not in a team or cooperative effort.  Tr. 19. The ALJ found that Mr. McGuire was unable to perform any past relevant work, but that he could perform other jobs that exist in significant numbers in the national economy.  Tr. 26.  The

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

1  ALJ therefore concluded that Mr. McGuire was not disabled.  Tr. 27.

2  **DISCUSSION**

3  **A.    Medical evidence**

4  Mr. McGuire argues that the ALJ erred in evaluating the evidence from treating nurse

5  practitioner Katherine Hester, ARNP, treating doctor Sonja Olson, M.D., examining psychologist

6  Janice Edwards, Ph.D., and treating mental health therapist Shauntae Willis, LICSE, CDP.  Dkt.

7  16 at 3-12.  In general, the ALJ should give more weight to the opinion of a treating doctor than

8  to that of a non-treating doctor, and more weight to the opinion of an examining doctor than to

9  that of a non-examining doctor.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where it is

10  not contradicted by another doctor, the ALJ may reject a treating or examining doctor's opinion

11  only for "clear and convincing reasons."  *Id.* at 830-31.  Where contradicted, the ALJ may not

12  reject a treating or examining doctor's opinion without "specific and legitimate reasons."  *Id.* at

13  830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  An ALJ does this by

14  setting out a detailed and thorough summary of the facts and conflicting evidence, stating her

15  interpretation of the facts and evidence, and making findings.  *Magallanes v. Bowen*, 881 F.2d

16  747, 751 (9th Cir. 1989).  The ALJ must do more than offer her conclusions; she must also

17  explain why her interpretation, rather than the treating doctor's interpretation, is correct.  *Orn v.*

18  *Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th

19  Cir. 1988)).

20  Nurse practitioners and therapists are not acceptable medical sources who can give

21  medical opinions.  *See* 20 C.F.R. § 404.1513(a).  The ALJ may evaluate opinions of other

22  medical sources using the same factors used to evaluate medical opinions of acceptable medical

23  sources.  Social Security Ruling 06-03p; *see also* 20 C.F.R. § 404.1527(d).  These factors include

1    the length and frequency of the treating relationship, how consistent the opinion is with other

2    evidence, the evidence the source presents to support the opinion, how well the source explains

3    the opinion, whether the source has a specialty or area of expertise related to the impairment, as

4    well as any other relevant factors. *Id.*; *see also* 20 C.F.R. § 404.1527(d). But the ALJ may give

5    less weight to opinions of non-acceptable medical sources than to those of acceptable medical

6    sources. SSR 06-03p. The ALJ must give specific, germane reasons for rejecting opinions from

7    other sources that are not acceptable medical sources. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th

8    Cir. 1993).

9         1.    *Ms. Hester*

10        Ms. Hester provided primary care to Mr. McGuire. On November 16, 2010, she

11    completed a Washington State Department of Social and Health Services (DSHS) physical

12    evaluation in which she opined that Mr. McGuire was severely limited by back pain due to a

13    herniated disc. Tr. 313-16. On June 7, 2011 Ms. Hester completed a DSHS functional

14    assessment in which she opined that Mr. McGuire could stand for a quarter of an hour and sit for

15    a quarter of an hour, and could lift 5 pounds occasionally and 5 pounds frequently; she opined

16    that his condition was stable and that she expected this level of impairment to last for 3 months.

17    Tr. 307-08. The ALJ gave the June 2011 opinion little weight because it did not meet the

18    durational requirement and because as part of her examination for the assessment, Ms. Hester

19    opined: "I feel that patient is not permanently disabled and would benefit greatly from working

20    regularly." Tr. 25, 311. The ALJ gave the November 2010 opinion little weight because Ms.

21    Hester was not a spinal specialist and because her later opinion showed that she did not find him

22    to be severely impaired for any long-term basis. Tr. 25. The ALJ also found that it appeared that

23    at the time of the assessment she encouraged Mr. McGuire to sign up for state benefits in order

REPORT AND RECOMMENDATION - 4

to get coverage for physical therapy and medication so he could get back to work in 6 to 12 months.  Tr. 25, 350.

     Mr. McGuire asserts that the ALJ did not give specific and legitimate reasons to reject Ms. Hester's opinions.  Dkt. 12 at 4.  But, as Ms. Hester was a nurse practitioner, the ALJ needed to provide only germane reasons to reject her opinion.

     Mr. McGuire asserts that the ALJ should have given the opinions greater weight because Ms. Hester was a treating provider, and should not have discounted the opinions because she was not a spinal specialist.  Dkt. 12 at 4-5.  The nature and length of the treatment relationship and a practitioner's area of specialty are factors the ALJ may consider in weighing an opinion.  SSR 06-03p.  The ALJ chose to give more weight to the lack of specialty than the length of the treatment relationship.  It is the province of the ALJ, not this Court, to determine how much weight to give to each factor.  The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  This Court may not disturb the ALJ's weighing of these factors.

     Mr. McGuire argues that the ALJ erred by finding that Ms. Hester's opinion did not meet the durational requirement.  Dkt. 16 at 5.  He points out that Ms. Hester noted that the onset of his back impairment was in May 2010, Tr. 308, she gave her opinions in November 2010 and June 2011, and she opined that his limitations would last 3 months from the date of her last opinion, thus meeting the 12-month durational requirement.  Dkt. 16 at 5.  To the extent that the ALJ rejected Ms. Hester's opinions because they did not cover a one-year period, this was error.  But the ALJ validly considered Ms. Hester's opinions that the level of impairment she opined in June 2011 would last only three months, that Mr. McGuire would benefit from returning to work, and that with physical therapy and medication he would be able to return to work.  Given the

1   other germane reasons the ALJ gave for rejecting Ms. Hester's opinions, any error in calculating

2   the timeframe covered by them was harmless.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d

3   1050, 1055 (9th Cir. 2006) (error may be harmless where the mistake was nonprejudicial to the

4   claimant or irrelevant to the ALJ's ultimate decision).

5        Mr. McGuire argues that there is no correlation between Ms. Hester's advice that he

6   should sign up for disability benefits in order to obtain treatment and the validity of her opinion.

7   Dkt. 12 at 6.  However, the ALJ did not err by considering Ms. Hester's belief that Mr. McGuire

8   needed benefits in order to obtain insurance coverage, rather than because he was unable to work

9   on a long-term basis.  The ALJ provided specific, germane reasons to reject Ms. Hester's

10  opinion.  This Court should not disturb her analysis.

11       2.    *Dr. Olson*

12       Dr. Olson treated Mr. McGuire at the same clinic as Ms. Hester.  She completed a

13  function report in October 2011 in which she opined that Mr. McGuire could lift a maximum of

14  5 pounds and could frequently lift 2 pounds, and he had postural and gross or fine motor skill

15  restrictions.  Tr. 406-09.  Dr. Olson opined in her treatment note: "With the impairments that

16  Shaun has, it does not seem likely that he would be able to work in any capacity in the next 12

17  months.  Limited ROM and numbness and his back pain limit his ability to be able to sit or stand

18  for prolonged periods, so even a sedentary job like working in a call center would be

19  unreasonable to expect him to do."  Tr. 412.  The ALJ gave this opinion less weight, finding that

20  the objective findings of limited range of motion did not support the severity of her opinion that

21  he was unable to perform sedentary work; Dr. Olson recommended only the conservative

22  treatment of a steroid injection, which was inconsistent with such severe findings; and Dr. Olson

23  did not have the opportunity to review other medical records, which showed that Mr. McGuire

1   was not as physically limited as he alleged, had some improvement with physical therapy, and

2   also did not comply with recommended treatment.  Tr. 24.

3         Mr. McGuire argues that there is no basis for the ALJ's finding that the objective findings

4   are inconsistent with Dr. Olson's opinion.  Dkt. 16 at 7.  An ALJ may properly reject a treating

5   physician's opinion that is not supported by objective evidence.  *See Meanel v. Apfel*, 172 F.3d

6   1111, 1113-14 (9th Cir. 1999).  But to merely state that a medical opinion is not supported by

7   sufficient objective findings "does not achieve the level of specificity our prior cases have

8   required, even when the objective factors are listed seriatim." *Embrey*, 849 F.2d at 421-22.  That

9   is all the ALJ did here.  This was not sufficient to reject the opinion.

10        Mr. McGuire also argues that the ALJ erred by finding that steroid injections are

11  conservative treatment inconsistent with the severity of Dr. Olson's findings.  Dkt. 16 at 7.  A

12  discrepancy between a doctor's statement assessing a patient's limitations and the doctor's

13  clinical notes, recorded observations, and other opinions is a clear and convincing reason for not

14  relying on the doctor's statement.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  The

15  only treatment recommendation Dr. Olson had was a referral to a spine specialist to get another

16  steroid injection, which Mr. McGuire reported had helped his pain until he reinjured his back.

17  Tr. 410-12.  The ALJ could rationally find that in light of the severe limitations Dr. Olson

18  described elsewhere, this was a conservative treatment recommendation.  And this inconsistency

19  between the severe limitations Dr. Olson assessed and the nature of the treatment she

20  recommended was a valid reason to discount the opinion.

21        Although Mr. McGuire does not address the ALJ's final reason for discounting the

22  opinion, the Court concludes that the ALJ could properly consider the fact that Dr. Olson did not

23  review other records that showed improvement with physical therapy or failure to comply with

REPORT AND RECOMMENDATION - 7

recommended treatment when evaluating her opinion.  *See Batson v. Comm'r of Soc. Sec.*

*Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may give less weight to a medical opinion

that is inconsistent with other evidence in the record).

   Although the ALJ gave one invalid reason, the ALJ gave other specific and legitimate

reasons, supported by substantial evidence, to reject Dr. Olson's opinion.  Accordingly, the Court

finds the use of the invalid reason harmless.  *See Stout*, 454 F.3d at 1055.  The Court should not

disturb the ALJ's assessment of Dr. Olson's opinion.

   *3.     Dr. Edwards*

   Dr. Edwards examined Mr. McGuire in November 2011.  She diagnosed bipolar affective

disorder, rule out posttraumatic stress disorder, and alcohol abuse/dependence in remission for

over 20 years, and assigned a global assessment of functioning score of 45-50, indicating serious

symptoms or a serious impairment in social, occupational, or school functioning.  Am.

Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. text rev.

1994).  She opined that Mr. McGuire had no problem with simple instructions but moderate

problems with complex instructions, some moderate limitations in areas of cognitive functioning,

and severe limitations in areas of social functioning.  Tr. 418-22.  The ALJ gave this opinion

little weight, finding that in was largely based on Mr. McGuire's self-reports, while Dr. Edwards

did not personally observe most of the reported symptoms, and the severity of the limitations was

based on Mr. McGuire's reported inability to communicate with others and significant periods of

an inability to get out of bed, which was inconsistent with the evidence and Mr. McGuire's own

testimony that he has to work a number of hours per week for his housing and that he enjoyed his

job interviewing prospective residents so much that he extended it twice.  Tr. 24.

   Mr. McGuire argues that the ALJ's reasons were not valid because Dr. Edwards

documented her personal observations of Mr. McGuire's symptoms, she did not suspect

malingering, and the ALJ's adverse credibility finding is flawed.  Dkt. 16 at 9.  An ALJ may give

less weight to a medical opinion that is based to a large extent on a claimant's self-reports that

have been properly discounted as incredible.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th

Cir. 2008).  But an ALJ does not provide adequate reasons for rejecting an examining

physician's opinion by questioning the credibility of the patient's complaints where the doctor

does not discredit those complaints and supports her ultimate opinion with her own observations.

*Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).  In this case, as discussed below, the

ALJ gave valid reasons to find Mr. McGuire not fully credible.  And, contrary to Mr. McGuire's

assertion, Dr. Edwards stated that for five out of the six symptoms she recorded, she did not

observe the alleged symptoms herself.  Tr. 419.  Because Dr. Edwards did not support her

opinion with her own observations, her reliance on Mr. McGuire's incredible self-reports was a

legitimate reason to discount Dr. Edwards's opinion.

Mr. McGuire argues that his ability to enjoy interviewing people or work a few hours a

week does not detract from the seriousness of his limitations.  Dkt. 16 at 9.  An ALJ may give

less weight to an opinion that is inconsistent with other evidence in the record.  *Batson*, 359 F.3d

at 1195.  The ALJ's finding that the ability to work a few hours a week and enjoy interviewing

people was inconsistent with an inability to get out of bed or communicate with others was a

rational interpretation of the evidence.  Although Mr. McGuire provides an alternate

interpretation of his activities, the Court may not disturb the ALJ's interpretation.  The ALJ

provided specific and legitimate reasons, supported by substantial evidence, to give Dr.

Edwards's opinion little weight.

1        *4.    Ms. Willis*

2        Ms. Willis provided mental health therapy to Mr. McGuire beginning in January 2012.

3    In July 2012, she wrote a letter in which she stated that Mr. McGuire had been diagnosed with

4    major depression disorder and post-traumatic stress disorder and described his depression and

5    anxiety symptoms.  She opined: "It is my professional opinion Mr. McGuire's mental health

6    symptoms would interfere with his ability to sustain regular attendance in employment at this

7    time." Tr. 523.  The ALJ gave this opinion less weight, finding that Ms. Willis is not an

8    acceptable medical source, she had been treating Mr. McGuire for only six months, most of her

9    findings were based on Mr. McGuire's self-reports, the severity of the symptoms she described

10    was inconsistent with most of the mental status examinations of record and her own treatment

11    records, and the finding of PTSD was contradicted by acceptable medical sources.  Tr. 23-24.

12        Mr. McGuire argues that the ALJ erred by rejecting Ms. Willis's opinion because she is

13    not an acceptable medical source and asserts that because Ms. Willis's six-month treatment

14    relationship was more than any of the consulting doctors had with Mr. McGuire, the ALJ erred

15    by giving those doctors' opinions more weight.  Dkt. 16 at 11.  But an ALJ may give less weight

16    to an opinion from a non-acceptable medical source.  SSR 06-03p.  The ALJ did not err by

17    considering Ms. Willis's status as a non-acceptable medical source or by giving more weight to

18    the opinions from acceptable medical sources, even those without a treating relationship.

19        Mr. McGuire argues that the ALJ's finding that Ms. Willis's opinion was supported

20    primarily by Mr. McGuire's self-reports was speculation on the part of the ALJ.  Dkt. 16 at 11.

21    While Ms. Willis discussed things she "observed" and Mr. McGuire "demonstrated," she also

22    discussed his "reports," things he "shared," and things he "describes."  Tr. 523.  The ALJ's

23    finding that Ms. Willis relied heavily on Mr. McGuire's self-reports was a rational interpretation

REPORT AND RECOMMENDATION - 10

1    of her opinion, even if Mr. McGuire proposes an alternate interpretation.  This was a germane

2    reason to discount the opinion.

3            Mr. McGuire argues that the ALJ failed to provide specific references to the record when

4    asserting that Ms. Willis's opinion was inconsistent with other evidence and the Court therefore

5    cannot evaluate this reason.  Dkt. 16 at 11-12.  However, the ALJ cited to a June 2012 treatment

6    note by Jesse Markman, M.D., who treated Mr. McGuire at the same clinic as Ms. Willis, that

7    documented improvement in depression and anxiety and a mental status exam that described him

8    as "doing well," and to an assessment by Dr. Markman that noted "He likely had full PTSD in

9    the past, but does not appear to meet criteria for a diagnosis at this time."  Tr. 489, 496.  These

10   notes directly contradict Ms. Willis's opinion and provide substantial evidence to support the

11   ALJ's finding that Ms. Willis's opinion was inconsistent with and contrary to the medical record.

12   The ALJ provided germane reasons, supported by substantial evidence, for giving little weight to

13   Ms. Willis's opinion.

14           **B.      Mr. McGuire's use of a cane**

15           Mr. McGuire argues that the ALJ erred by failing to include his need to use a cane in the

16   residual functional capacity finding, asserting that "the record does not support a finding that the

17   Plaintiff was capable of performing sedentary work without the use of a cane as found by the

18   ALJ."  Dkt. 16 at 12-13.

19           Mr. McGuire's need for a cane is undisputed.  The consultative examiner, Jeff Chang,

20   M.D., opined that Mr. McGuire used a cane for balance and for pain, on all types of terrain, and

21   that this use appeared medically necessary.  Tr. 387.  He further opined that Mr. McGuire's

22   dependence on a cane caused the following limitations: he could stand for four hours in an eight-

23   hour workday, lift and carry 20 pounds occasionally and 10 points frequently, never climb and

1    only occasionally balance, stoop, kneel, crouch, or crawl, and had limitations to working at

2    heights, around heavy machinery, and extremes of temperature, chemicals, dust, fumes, and

3    gases.  *Id.*  The ALJ gave Dr. Chang's opinion some weight, but found that the overall evidence

4    supported a limitation to sedentary work.  Tr. 25.

5         Reviewing doctor Brent Packer, M.D., opined that a medically required hand-held

6    assistive device was necessary for Mr. McGuire's ambulation, and that Mr. McGuire could lift

7    and carry 20 pounds occasionally and 10 points frequently, with the standing, postural and

8    environmental limitations eventually adopted by the ALJ.  Tr. 126-27.  The ALJ gave Dr.

9    Packer's opinion significant weight, finding that it was based on a review of all of Mr.

10   McGuire's medical records to date, it was supported by references to the objective medical

11   evidence of record, and it was consistent with the overall objective evidence of record including

12   Mr. McGuire's reported activities that include work activity at his residence, using the computer

13   during the day, attending appointments, and using public transportation.  Tr. 25.

14        At the hearing, the vocational expert testified that need to use a cane to ambulate would

15   not affect the ability to perform the jobs he considered in response to the ALJ's hypothetical

16   because those jobs were sedentary and did not require much lifting or walking; he believed a

17   person using a cane could do the lifting and walking they required.  Tr. 73-74.  The ALJ's

18   residual functional capacity finding essentially adopted Dr. Chang's and Dr. Packer's opinions

19   with respect to postural and environmental limitations, but included greater standing and lifting

20   limitations.  Tr. 19.

21        The ALJ did not state in the finding that Mr. McGuire needed to use a cane in order to

22   work at that level.  Mr. McGuire characterizes this omission as a finding that he was capable of

23   performing work at that level without a cane.  However, given the medical evidence the ALJ

relied on and the vocational expert's testimony, it is clear that this omission did not equate to a finding that he could perform work at that level without the use of a cane. Indeed, Social Security policy contemplates the performance of sedentary work while using a cane. Social Security Ruling 96-9p provides:

> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand.

SSR 96-9p. The need to use a cane is not inconsistent with the ability to perform sedentary work. The ALJ's finding that Mr. McGuire could perform sedentary work is consistent with his dependence on a cane, even without expressly including that need in the residual functional capacity finding. The ALJ's failure to state in her residual functional capacity finding that Mr. McGuire must use a cane was not error.

### C.      Mr. McGuire's credibility

Mr. McGuire argues that the ALJ erred by finding him not fully credible. Dkt. 16 at 14. The ALJ did not find that Mr. McGuire was malingering. Thus, the ALJ was required to provide clear and convincing reasons to reject his testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An ALJ does this by making specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found that there was evidence that Mr. McGuire was not as limited as he claimed, pointing to his statement that he could walk without his cane for a few minutes, his report to a provider that his pain was variable, which contradicted his testimony that it was constant, his plans to take classes and finish writing books he was working on, and his ability to

1   sit calmly throughout an examination without fidgeting and without appearing uncomfortable.

2   Tr. 21.  The ALJ also found that Mr. McGuire was not as socially or cognitively limited as he

3   alleged, as he reported that he had an extensive social support system, for fun and recreation he

4   engaged in various activities including reading and writing, computers/internet, and going to

5   coffee.  *Id.*  Mr. McGuire argues that these findings are neither clear nor convincing,

6   characterizing them as confusing and inconsistent.  Dkt. 16 at 14-15.  But the ALJ may consider

7   "ordinary techniques of credibility evaluation," including inconsistencies in the claimant's

8   testimony or between his testimony and conduct.  *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th

9   Cir. 1996).  The ALJ identified inconsistencies in Mr. McGuire's statements and between the

10  evidence and his allegations.  Although Mr. McGuire may disagree with the ALJ's interpretation

11  of this evidence, where, as here, the ALJ's interpretation is rational, this Court may not disturb it.

12  *Thomas*, 278 F.3d at 954.  The inconsistencies the ALJ identified were a valid reason to question

13  Mr. McGuire's credibility.

14        The ALJ found that Mr. McGuire was not entirely compliant with adhering to prescribed

15  treatment recommendations.  Tr. 21.  Unexplained, or inadequately explained, failure to seek

16  treatment or follow a prescribed course of treatment is a clear and convincing reason to question

17  a claimant's credibility.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  The ALJ noted

18  that Ms. Hester repeatedly recommended physical therapy, and after a year expressed frustration

19  that Mr. McGuire had not started.  Tr. 344, 350.  Once he did start physical therapy, the physical

20  therapist noted improvement, but Mr. McGuire did not follow up with further care.  Tr. 286, 288,

21  290.  And Mr. McGuire later reported that physical therapy resulted in no improvement, contrary

22  to the therapy records.  Tr. 293.  The ALJ also noted that Mr. McGuire's providers recommended

23  weight loss on a number of occasions.  Tr. 21.  The ALJ concluded that Mr. McGuire's

REPORT AND RECOMMENDATION - 14

1   noncompliance suggested that he may be able to control his symptoms with treatment, thereby

2   placing his motivation in question, and that his condition was not as severe as alleged. *Id.*

3       Mr. McGuire asserts that there were indications that his depression interfered with his

4   ability to comply with treatment recommendations and that, even when he did follow through by

5   engaging in physical therapy and losing weight, it did not result in any lasting improvement.

6   Dkt. 16 at 15-16.  Although Mr. McGuire proffers an explanation for not beginning physical

7   therapy, he points to nothing in the record to support this explanation.  Moreover, his assertion

8   that the recommended treatment had no benefit is contradicted by the treatment records

9   themselves.  The ALJ did not err by finding Mr. McGuire's failure to follow recommended

10  treatment undermined his credibility.

11      The ALJ found that there was no objective medical evidence to support the alleged

12  severity and limiting effects of either Mr. McGuire's physical or mental impairments. Tr. 21-23.

13  Although lack of objective medical evidence cannot be the sole reason an ALJ discounts

14  subjective complaints, it is a relevant factor that the ALJ can consider in his credibility analysis.

15  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  The ALJ discussed imaging results that

16  revealed only mild to moderate or minimal findings in Mr. McGuire's spine and right knee, and

17  records that described his diabetes as uncomplicated. Tr. 21-22.  The ALJ further noted that Mr.

18  McGuire's providers generally did not report significant mental health symptoms when he

19  sought care for physical issues; a psychological exam found Mr. McGuire to be friendly and

20  cheerful, logical and goal-directed, with grossly intact cognition, but an unreliable reporter who

21  saw himself as more mentally disordered than he was; and various treatment notes found no

22  evidence of anxiety or depression and minimal mental status exam findings. Tr. 23.  Mr.

23  McGuire faults the ALJ's analysis of the medical evidence, arguing that it lacks a clear nexus to

credibility, is unconvincing, and it selectively cites to instances of improvement or stability.  Dkt. 16 at 16-17.  The ALJ cited to evidence from the medical record that undermined Mr. McGuire's asserted limitations.  Although Mr. McGuire may disagree with the ALJ's interpretation, because it was rational, the Court will not disturb it.  The lack of supporting objective medical evidence was a valid reason to find Mr. McGuire not fully credible.

Because the ALJ gave clear and convincing reasons, supported by substantial evidence, for finding Mr. McGuire not credible, the Court should not disturb the ALJ's credibility assessment.

## CONCLUSION

The Commissioner's decision was free of harmful legal error and supported by substantial evidence.  Accordingly, the Court recommends that the Commissioner's decision be **AFFIRMED** and this case be **DISMISSED** with prejudice.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **December 5, 2014**.  If no objections are filed, the matter will be ready for the Court's consideration on that date.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect the right to appeal.

DATED this 21st day of November, 2014.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 16